## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| K.R., a minor, by her Parents | : | CIVIL ACTION |
| v. | : | |
| SCHOOL DISTRICT OF PHILADELPHIA, et al. | : | NO. 06-2388 |

### MEMORANDUM RE: ALL OUTSTANDING MOTIONS

**Baylson, J.**                                                         **June 26, 2008**

Michelle and Charles Riley,[1] on behalf of their daughter, K.R., have commenced this action against the School District of Philadelphia and several individual defendants[2] (collectively "Defendants").  Among other claims, Plaintiffs allege the Defendants failed to provide K.R. with free access to public education in violation of the Individuals with Disabilities in Education Act (hereinafter "IDEA"), 20 U.S.C. § 1401 et seq.  In its September 14, 2007, this Court dismissed the complaint with prejudice as to the Mentor Network/Pennsylvania Mentor (hereinafter "PA Mentor") and its employees Nikki Shames and Dawn Vitello Mangan, but did not dismiss the complaint as to the School District and its employees.  K.R. v. School District of Philadelphia, 2007 WL 2726236, *1 (E.D.Pa. Sept. 14, 2007).  Presently before this Court are five outstanding motions, on which this Court held oral argument on June 16, 2008.

_____

[1]  Michelle Fisher and Charles Riley are the biological parents of K.R.  Since the filing of this lawsuit, Michelle Fisher married Charles Riley, and has taken "Riley" as her last name. (Doc. No. 72, n. 2).

[2]  The individual Defendants are: Paul Vallas, the CEO of the Philadelphia School District; Joseph Bahm, the principal of the Solis-Cohen Elementary School; Michelle Byruch, the assistant principal of the Solis-Cohen Elementary School; and Dr. Lawrence Taylor, the school psychologist.

For the following reasons, the Court will grant Plaintiffs' Motion to Admit Additional Evidence, and will also grant Defendants' Motion for Judgment on the Administrative Record as to Plaintiffs' IDEA claim and Defendants' Motion for Summary Judgment as Plaintiffs' Section 1983 claim.  Defendants' Motions concerning the Rehabilitation Act and the Americans with Disabilities Act (hereinafter "ADA") will be denied.

## I.    Background

K.R. was born on November 6, 1997 and diagnosed with Autism Spectrum Disorder (Asperger Syndrome).  As the Court previously summarized in its Memorandum concerning Defendants' Motion to Dismiss, before K.R. entered kindergarten at Solis-Cohen Elementary School, Dr. Taylor evaluated her in May 2003 and the School District developed an Individualized Education Program ("IEP") for her.  Dr. Taylor did not diagnose K.R. with autism, but identified her as learning disabled, and recommended learning support.  The IEP provided for "as needed" assistance through the School Based Behavioral Health ("SBBH") program at Solis-Cohen Elementary.  In December 2003, halfway through K.R.'s first year of kindergarten, the school revised her IEP to include one-on-one therapy from a staff assistant at the PA Mentor network, an organization contracted by the School District to provide therapeutic staff support and "wraparound services."

The following school year, while K.R. was in first grade, the District eliminated her one-on-one support, and provided her with an "uncertified teacher for her instruction."  During the same year, K.R. was verbally and physically assaulted by her classmates on a number of occasions, incidents which Plaintiffs claim the School District attempted to conceal.  Fearful for K.R.'s safety and dissatisfied with the instruction she was receiving, K.R.'s parents withdrew her

from Solis-Cohen Elementary in 2005, and have been home-schooling her since.

In May 2005, K.R.'s parents sought a due process hearing under the IDEA, on the grounds that the District had failed to provide their daughter with a free appropriate public education ("FAPE") and safe school environment.  After seven hearing sessions between July and December 2005, the Hearing Officer denied the parents' request for compensatory education and tuition reimbursement.  The Hearing Officer concluded that the record weighed in favor of the School District that it properly evaluated K.R. as needing learning support for attention deficits, and therefore was not a denial of FAPE.  The Hearing Officer similarly found no denial of FAPE with regard to speech and language services or occupational and physical therapy.  The Appeals Panel affirmed the Hearing Officer's decision on March 9, 2006, and Plaintiffs commenced this action on June 13, 2006.

In their Second Amended Complaint, Plaintiffs bring five claims against Defendants. Count One, which is against the School District only, alleges violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 et seq.  Count Two, brought against the School District and PA Mentor only, alleges violation of the Rehabilitation Act, 20 U.S.C. § 794. Count Three, brought against the individual Defendants and PA Mentor only, alleges violations of Plaintiffs' constitutional rights under 42 U.S.C. § 1983.  Count Four, brought against the School District and PA Mentor only, alleges violations of the Americans with Disabilities Act (the "ADA").  Count Five, which appears to be against all Defendants, alleges violations of state law.

## II.    Contentions of the Parties

### A.    Motion for Judgment on the Administrative Record

In their Motion (Doc. No. 68), Defendants ask the Court to affirm Opinion No. 1702 of the Special Education Appeals Review Panel and enter judgment in favor of the School District, as the decision of the Appeals Panel was supported by the facts and the record read in its entirety, and there is no contrary non-testimonial evidence in the record.  Defendants contend that after a thorough analysis, the Hearing Officer found that the School District provided appropriate evaluations and provided meaningful educational benefit to K.R. and denied Plaintiffs' requests. Plaintiffs filed Exceptions to the Decision of the Hearing Officer, which the Appeals Panel denied and issued a unanimous opinion affirming the Hearing Officer's decision in its entirety. Specifically, Defendants argue the Hearing Officer correctly determined that the educational evaluations of the School District was appropriate, the SBBH program was adequate to address K.R.'s needs, nothing about the design or implementation of the related services was deficient, and that the Appeals Panel's decision that the goals and objectives in the December 2004 IEP were meaningful and appropriate was correct.

In their Response (Doc. No. 79), Plaintiffs contend that K.R. was denied FAPE because Dr. Taylor's cursory evaluation was wrong.  Plaintiffs contend that Dr. Taylor did not consider autism spectrum disorder or related conditions such as Asperger's, and mistakenly diagnosed her with a mere learning disability.  Plaintiffs argue that as her original evaluation was incorrect, the ensuing IEP was per se incorrect and was thereby a denial of FAPE.

In their Reply (Doc. No. 82), Defendants contend that Plaintiffs have presented no legally competent or credible evidence contradicting the Appeals Panel's findings concerning the School District's evaluation of K.R., and where there is no contrary nontestimonial extrinsic evidence on the record, the Court must defer to the factual findings of the administrative proceeding, citing

-4-

S.H. v. State-Operated Sch. Dist. of the City of Newark, 336 F.3d 260, 270 (3d Cir. 2003).

      B.     Motion for Summary Judgment on Counts II (Rehabilitation Act) and IV (ADA)

      In their Motion (Doc. No. 68), Defendants contend that compensatory damages are not appropriate relief under Section 504 of the Rehabilitation Act or the ADA.  Defendants contend that it is the parents' burden to show evidence that would demonstrate the School District acted on the basis of K.R.'s disability.  Eric. H. ex. rel. John H. v. Methacton Sch. Dist., 265 F.Supp.2d 513, 522 (E.D.Pa. 2003).  Moreover, Plaintiff have provided no legally sufficient or credible evidence that the School District attempted to conceal incidents of bullying and assault by other students, that the School District had a practice of not reporting or underreporting violent assaults upon students with disabilities, or that K.R. was excluded from participation in any school programs or denied the benefits of those programs solely by reason of her disability.  Thus, Defendants urge the Court to find that Plaintiffs cannot maintain their claim under Section 504 or the ADA for damages.  Defendants also contend that Plaintiffs claim for reasonable attorney's fees under the IDEA and Section 504 is not permitted, as Plaintiffs were not the prevailing party in the administrative proceeding.

      In their Response (Doc. No. 76), Plaintiffs argue that compensatory damages are available directly under Section 504 and the ADA because the School District is a recipient of federal funds and a public entity.

      In their Reply (Doc. No. 82), Defendants contend that Plaintiffs have not met their burden to identify any School District policymaker whose actions could create municipal liability on the School District, as none of the named individual Defendants are final policymakers of the School District.  Similar to the Tenth Circuit's holding in Milligan-Hitt v. Bd. of Trustees of Sheridan

County Sch. Dist. No. 2, 2008 U.S. App. LEXIS 9717 (10th Cir. Apr. 22, 2008), it is the judge, not the jury, who should determine who exercises final policymaking authority in the School District.

      C.    Motion for Summary Judgment on Count III (Section 1983 claim)

In Count III of their Second Amended Complaint, Plaintiffs allege violations of 42 U.S.C. § 1983, arguing that the individual defendants violated Plaintiffs' constitutional rights by "acting intentionally, willfully and with deliberate indifference, to deprive her of rights and privileges." (Sec. Am. Compl. at ¶ 52).

In their Motion for Summary Judgment as to Count III (Doc. No. 70), Defendants contend that in order to prove such a claim under Section 1983, Plaintiffs must offer evidence that there is a genuine issue for a jury to determine whether K.R. "received different treatment from other similarly situated individuals or groups." See Brown v. Borough of Mahaffey, PA, 35 F.3d 846, 850 (3d Cir. 1994) (internal citations omitted).  Defendants argue Plaintiffs have failed to show any genuine issues of material facts that the treatment of K.R. was different than treatment of other students similarly situated.  They also contend that none of the individual defendants is a policymaker of the School District for purposes of Section 1983 liability.  Finally, Defendants contend that they are entitled to qualified immunity, compensatory damages are not appropriate relief, the Paul D. Coverdell Teacher Protection Act of 2001, 20 U.S.C. § 6731, provides absolute immunity, and the claims against Dr. Taylor are barred by the two-year statute of limitations.

In their Response (Doc. No. 76), Plaintiffs contend that Defendants failed to address the broader issue of whether Defendants' conduct fits into the exception of the "state created

-6-

danger." See Davis v. Monroe, 526 U.S. 629 (1999).  Further, Plaintiffs contend that 20 U.S.C. §

6731 does not protect the individual defendants from the Section 1983 claim.  Plaintiffs argue

that the two-year statute of limitations did not begin to run on April 18, 2005, as Defendants

contend, but began on March 9, 2006, as they had to exhaust their administrative remedy before

bringing any federal statutory claims.  See Jeremy H. v. Mount Lebanon School District, 95 F.3d

272, 280 (3d Cir. 1996) (adopting the approach that the period begins once the state

administrative process has run its course).  Finally, Plaintiffs contend that all Defendants acted

with deliberate indifference to the rights of K.R., and that Defendants are not entitled to qualified

immunity, as Plaintiffs have demonstrated a constitutional right that was clearly established at

the time of the alleged violation.

        In their Reply (Doc. No. 83), Defendants continue to assert qualified immunity, citing

Milligan-Hitt.  Defendants object to all of Plaintiffs' arguments based on a state-created danger

theory.  Defendants further contend that the claim against Dr. Taylor could not have been

exhausted in the administrative proceeding, so there is no tolling of the accrual of the statute of

limitations while the administrative proceeding is pending.  Indeed, Defendants argue that the

statute of limitations for a Section 1983 claim for a direct constitutional denial of Equal

Protection in Pennsylvania accrues on the date the injury was sustained (the accrual date would

thus have been in May, 2005).  Finally, Defendants note that Plaintiffs concede[3] that 20 U.S.C. §

6731 applies to Mr. Vallas, Mr. Bahm and Ms. Byruch, and that there is no evidence of gross

---

[3] It is true that Plaintiffs' brief concedes the Act applies (see Doc. No. 76, p. 14), but
based on Plaintiffs' oral argument, that the Act does not apply, this concession may be a
typographical error - it appears Plaintiffs may have accidentally omitted the word "not" in stating
the statute does apply.

negligence on their part.

**III.    Legal Standard**

    A.    <u>Jurisdiction</u>

This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

    B.    <u>Standard of Review</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  <u>Id.</u>

With respect to Plaintiffs' claim under the IDEA, any party aggrieved by the decision made by a Hearing Officer under the IDEA has the right to bring a civil action in a district court of the United States, and the court (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.  20 U.S.C. § 1415(i)(2).  Thus, the reviewing court should not adopt the traditional summary judgment standard of review.  <u>See e.g.</u> <u>Bucks County Dep't of Mental Health/Mental Retardation v. Barbara DeMora</u>, 227 F.Supp.2d 426 (E.D.Pa. 2002).

In IDEA cases, district courts are required to give "due weight" to the factual findings in

state administrative proceedings.  Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982).  In this context, "due weight" constitutes a "modified de novo review."  S.H., supra; see also Blount v. Lancaster-Lebanon Intermediate Unit, 2003 U.S. Dist. LEXIS 21639 (E.D.Pa. Nov. 12, 2003).  The Third Circuit has held that under this standard of review, a federal district court reviewing the administrative fact finder in the first instance is required to defer to his or her factual findings unless it can point to contrary non-testimonial extrinsic evidence on the record.  Where the district court does not accept the state administrative fact findings, it must explain why "to avoid the impression that it is substituting its own notions of sound educational policy for those of the agency it reviews."  S.H., supra.  "The very importance which Congress has attached to compliance . . . would be frustrated if a court were permitted to simply set state decisions at nought."  Rowley, 458 U.S. at 206.

As to the remaining claims at summary judgment, a party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."  Id. at 325.  After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).  Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477

U.S. at 322.  Under Rule 56, the Court must view the evidence presented on the motion in the

light most favorable to the opposing party.  <u>Anderson</u>, 477 U.S. at 255.

**IV.     Discussion**

> A.     <u>Plaintiffs' Motion to Admit Additional Evidence will be Granted</u>

As discussed at the oral argument held on June 16, 2008, this Court will grant Plaintiffs'

Motion to admit additional evidence.

> B.     <u>IDEA</u>

The overarching requirement of the IDEA framework is that all the activities of the state

are directed towards ensuring that "[a] free appropriate public education is available to all

children with disabilities.  20 U.S.C. § 1412(a)(1).  In <u>Board of Education v. Rowley</u>, 458 U.S.

176, 188-89 (1982), the Supreme Court held that a "free appropriate public education" consisted

of "educational instruction specially designed to meet the unique needs of the handicapped child,

supported by such services as are necessary to permit the child to benefit from the instruction."

Federal funding under the IDEA is contingent on state compliance with its array of substantive

and procedural requirements.  <u>Lawrence Twp. Bd. of Educ. v. New Jersey</u>, 417 F.3d 368, 370 (3d

Cir. 2005).

The main vehicle for the provision of a FAPE under the IDEA is the Individualized

Education Program ("IEP").  <u>Honig v. Doe</u>, 484 U.S. 305 (1988); <u>S.H. v. State-Operated Sch.</u>

<u>Dist. of the City of Newark</u>, 336 F.3d 260, 265 (3d Cir. 2003).  The IEP is a written plan, created

by a multi-disciplinary team, delineating a package of special educational and related services

designed to meet the unique needs of a disabled child.  <u>Carlisle Area Sch. Dist. v. Scott P.</u>, 62

F.3d 520, 526 (3d Cir. 1995).  The IEP must reflect the child's actual educational needs.  It does

so by including summaries of the child's abilities and present levels of educational performance,

outlines of measurable educational goals, specification of educational services to be provided,

and appropriate evaluation procedures and schedules for determining whether instructional

objectives are being achieved.  20 U.S.C. § 1414(d)(1)(A); 34 C.F.R. § 300.347; Polk v. Central

Susquehanna Intermediate Unit 16, 853 F.2d 171, 173 (3d Cir. 1988); Robert B. ex rel. Bruce B.

v. West Chester Area School Dist., 2005 WL 2396968, *2 (E.D.Pa. Sept. 27, 2005).  For an IEP

to be appropriate, it must offer a child progress in all relevant domains (behavioral, social,

emotional) via "meaningful educational benefit[s]."  S.H. 336 F.3d at 265; M.C. v. Central

Regional Sch. Dist., 81 F.3d 389, 394 (3d Cir. 1996).

The IDEA requires every public school system receiving federal funds to develop and

implement an IEP for each disabled child in its jurisdiction.  The IEP team is required to review

each child's IEP at least annually to determine whether the child is reaching the stated goals, and

the IEP team is to revise the IEP to address lack of progress and make necessary changes arising

from reevaluation of the child and parental input.  20 U.S.C. § 1414(d)(4)(A); 34 C.F.R. §

300.343(c)(2); S.H., 336 F.3d at 265.

The Hearing Officer, William F. Culleton, Jr., submitted a 16-page decision in which he

made 50 separate findings of fact.  Among his findings, the Hearing Officer concluded that the

record weighed in favor of the School District in that it properly evaluated K.R. based on the

information available at the time and that a diagnosis of autism would not have necessarily led to

a different placement in school.  (Hr'g Off. Dec. at 9).  The Hearing Officer also concluded that

the School District's decision not to provide behavioral support through one-to-one behavioral

services was not a denial of FAPE, and thus K.R. was not entitled to compensatory education (Id. at 13).  The Hearing Officer found that Plaintiffs failed to provide evidence concerning a failure to provide adequate speech and language services, failure to provide occupational and physical therapy, or any other failure to provide FAPE.

K.R.'s parents filed an 18-page list of exceptions, and also filed three petitions for interlocutory appeals.  (App. Panel Dec. at 6).  On March 9, 2006, the Appeals Panel affirmed the Hearing Officer's decision, finding that the record as a whole supported the Hearing Officer's determination that the School District did not know nor should have known about K.R.'s true diagnosis, that the lack of a one-to-one aide did not deny K.R. FAPE, and that the goals and objectives of K.R.'s IEP could have been improved but were not fatally flawed.  The Appeals Panel continued that nothing in the record supports a finding that the provision (or lack thereof) of related services was in error, and as there was no denial of FAPE, there was no basis for an award of compensatory education or tuition reimbursement.

The Court finds no reason to depart from the Hearing Officer's and Appeals Panel's findings.  Plaintiffs have presented no contrary non-testimonial evidence on the record.  Even Plaintiffs' additional exhibits - the Pennsylvania Autism Executive Summary and the Pennsylvania Autism Full Report of 2004 - which this Court allowed into evidence, do not cause this Court to disagree with the Hearing Officer's findings.  In urging this Court to disagree with the Hearing Officer's conclusions, Plaintiffs place significant emphasis on the fact that Dr. Taylor incorrectly diagnosed K.R.  (Pl's Resp. at 5).  But the Hearing Officer reviewed Dr. Taylor's findings, noting that he identified K.R. as learning disabled and recommended learning support.  The Hearing Officer concluded that "[t]he District was unaware of any reason to

consider a diagnosis of autism," and that the district "properly found that [K.R.] exhibited a generalized learning disability of probable organic origin." (Hr'g Off.'s Findings of Fact 9, 10). This Court finds that there is no contrary non-testimonial extrinsic evidence on the record that would allow the Court to deviate from the fact findings of the Hearing Officer. Thus, this Court defers to the findings of the Hearing Officer and Appeals Panel, and will grant Defendants' Motion for Judgment on the Administrative Record.

C.    Rehabilitation Act/ADA

Section 12132 of the ADA provides that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (1990).

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (2002).

In order to establish a violation of the Rehabilitation Act, Plaintiffs must offer evidence that: (1) she is a "handicapped individual;" (2) she is "otherwise qualified" for participation in the program; (3) the School District receives "federal financial assistance;" and (4) she was "denied the benefits of" or "subject to discrimination" under the program solely by reason of her disability. Nathanson v. Medical College of Pennsylvania, 926 F.2d 1368, 1380 (3d Cir. 1991). Although a plaintiff must show that defendants knew or reasonably should have known of the child's disability, a plaintiff does not need to prove that defendants' discrimination was

-13-

intentional.  Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 253 (3d Cir. 1999).  Title II of the

ADA "extend[s] Section 504's anti-discrimination principles to public entities," and the same

substantive standards for determining liability apply under both statutes.  Helen L. v. DiDario, 46

F.3d 325, 332 (3d Cir. 1995); Antol v. Perry, 82 F.3d 1291, 1299 (3d Cir. 1996).

 Defendants argue that Plaintiffs are not entitled to compensatory damages under Section

504 and the ADA.  In dicta, the Third Circuit has stated that it does "not preclude the awarding of

monetary damages and leave[s] to the district court in the first instance the task of fashioning

appropriate relief."  W.B. v. Matula, 67 F.3d 484, 495 (3d Cir. 1995) (overruled in part by A.W.

v. Jersey City Pub. Schs., although A.W. did not address the dictum concerning monetary

damages under the IDEA.  Other courts, however, have found that compensatory damages are

inconsistent with the purpose and statutory scheme of IDEA.  See D.G. v. Somerset Hills School

Dist., 2008 WL 1790571 at *8 (D.N.J. Apr. 18, 2008); Brandon V. v. Chichester Sch. Dist., 2007

U.S. Dist. LEXIS 53852, at *8 (E.D.Pa. July 25, 2007); Charlie F. v. Bd. of Educ., 98 F.3d 989,

991 (7th Cir. 1996); Sellers v. Sch. Bd., 141 F.3d 524, 527 (4th Cir. 1998); Polera v. Bd. of

Educ., 288 F.3d 478, 485-86 (2d Cir. 2002); Witte v. Clark County Sch. Dist., 197 F.3d 1271,

1275 (9th Cir. 1999).

 The claims under the ADA and the Rehabilitation Act are not identical to those under the

IDEA and are adjudicated according to standard Rule 56 analysis.  It is evident that there are

some factual disputes in the record that pertain to both claims, including Plaintiffs' allegations

concerning the bullying and assault of K.R. by her classmates.  In the Statements of Undisputed

Facts and their responses, the parties disagree about how many incidents occurred while K.H.

was in the SBBH program, what happened in the classroom when the alleged incidents occurred,

and the degree of severity of K.R.'s sustained injuries (Statements of Undisputed Facts ¶¶ 4, 9, 11, 12, 13). Plaintiffs have evidence for trial, from which a jury could conclude that Defendants should have taken more or different measures to protect K.R.'s well-being pursuant to Section 504 and the ADA because Defendants were knowledgeable about her disabled status. Therefore, the Court will deny Defendants' Summary Judgment Motion with respect to Counts Two and Four, and will schedule them for trial.

    D.    Section 1983

In A.W. v. Jersey City Public Sch., 486 F.3d 791, 803-806 (3d Cir. 2007), the Third Circuit held that "Congress did not intend Section 1983 to be available to remedy violations of the IDEA [and Section 504]." In its September 14, 2007 Order, however, this Court noted that A.W. only mandates dismissal of Section 1983 claims predicated on violations of the IDEA and Section 504. K.R. v. School District of Philadelphia, 2007 WL 2726236, *3 (E.D.Pa. Sept. 14, 2007). In the present case, Plaintiffs allege that the individual defendants violated K.R.'s constitutional (and not statutory) rights, and thus the Section 1983 claim was not dismissed. As Plaintiffs' counsel stated at oral argument, Plaintiffs allege K.R.'s liberty interests were infringed and Section 1983 provides a remedy. In other words, Plaintiffs' Section 1983 claim exists independently of her disabled status. Plaintiffs focus their Section 1983 claim on essentially the same facts as the ADA and Rehabilitation Act claims - principally that Defendants failed to adequately protect K.R. from danger, which resulted in her physical, emotional and mental injury. There is no evidence that any of the individual Defendants personally caused these injuries.

Defendants' arguments concerning the statute of limitations must be rejected. In Jeremy

H. by Hunter v. Mount Lebanon School Dist., 95 F.3d 272 (3d Cir. 1996), the district court had applied a two-year statute of limitations beginning on the date the complaint was filed.  The Third Circuit disagreed with this application, concluding that the period for the IDEA claims (including a Section 1983 claim) should begin once the state administrative process had run its course.  The appellate panel issued its decision on March 9, 2006, and thus Plaintiffs' claims now before this court, including those against Dr. Taylor, were timely brought.

      1.     *Qualified Immunity*

"Qualified immunity is an 'entitlement not to stand trial or face the other burdens of litigation.'  The privilege is 'an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" Saucier v. Katz, 533 U.S. 194, 200-201 (2001) (internal quotations omitted).  When a defendant asserts a defense of qualified immunity in a motion for summary judgment, as Defendants have in the present case, the plaintiff bears the initial burden of showing that the defendant's conduct "violated some clearly established statutory or constitutional right."  Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997) (internal citations omitted).  It is only after the plaintiff has met this initial burden that defendant then must "demonstrate that no genuine issue of material fact remains as to the 'objective reasonableness' of the defendant's belief in the lawfulness of his actions."  Id.

In order to establish a Section 1983 claim, a plaintiff "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law."  Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995) (internal quotations omitted).  Under Saucier v.

-16-

Katz, 533 U.S. 194 (2001), a court analyzing a claim of qualified immunity must first ask the "threshold" question: whether the facts alleged show that the official's conduct violated a constitutional right. Id. at 201. If the plaintiff fails to show a constitutional violation, however, then the state actor is entitled to qualified immunity. Bennett v. Murphy, 274 F.3d 133, 136-37 (3d Cir. 2002). If the plaintiff's allegations establish the violation of a constitutional right, the violation is necessarily actionable and the court can then proceed to the second inquiry in the Saucier analysis: whether the right was "clearly established." Saucier, supra. At this step of the inquiry, the analysis is based "solely upon the law. If it would not have been clear to a reasonable [state actor] what the law required under the facts alleged, he is entitled to qualified immunity. If the requirements of the law would have been clear, the [state actor] must stand trial." Bennett, 274 F.3d at 136-37.

The balance between a minor child's civil rights and a school's ability to regulate and oversee that child's education can be a delicate one. For certain, a child does not check his or her rights at the schoolhouse door; however, "[t]he very nature of the school system, public and private, requires that student liberties and freedom may not be absolute." Zeller v. Donegal School Dist. Bd. of Ed., 517 F.2d 600, 606 (3d Cir. 1975). The Third Circuit noted that faculty and school officials must prescribe curriculum, promulgate rules for academic courses and extracurricular activities, and set standards for grading and graduation. Id. And while public school students "do have substantive and procedural rights while at school . . . . Section 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations." Id. (internal citations omitted).

When this Court takes the facts in the light most favorable to Plaintiffs, as <u>Saucier</u> requires, it is clear that Plaintiffs have shown a violation of a clearly established constitutional right, i.e. the right of a young student to be free from physical harm while attending school.[4] Thus, the Court must proceed to the second step of the qualified immunity analysis and determine whether there is any genuine issue of material fact that remains as to the objective reasonableness of Defendants' beliefs in the lawfulness of their actions.  This Court concludes that there is not.  The school district and its employees evaluated K.R. pursuant to the IDEA and constructed an IEP according to her needs.  When it appeared that her program needed supplementation, the school revised K.R.'s IEP to include one-on-one therapy.  The following year, when the school eliminated her one-on-one support, it provided her with an uncertified teacher for her instruction.  All of these decisions were objectively reasonable.  Based on her initial evaluation and her development (or lack thereof) in school, the School District and its employees made changes to K.R.'s IEP and her education that were objectively reasonable.  One result of these steps was that K.R. was placed in a classroom with other students.  Defendants had no reason to believe that K.R. would suffer her injury as she unfortunately did.  As such, the School District employees are entitled to qualified immunity.

    2.    *The Paul D. Coverdell Teacher Protection Act*

Defendants also contend that the Paul D. Coverdell Teacher Protection Act of 2001, 20

---

[4] Plaintiffs' claim falls under the "state-created danger" doctrine, the elements of which are: (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; and (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur.  <u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137, 1152 (3d Cir. 1995) <u>see also</u> <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1208 (3d Cir. 1996).

U.S.C. § 6731, provides absolute immunity for the individual defendants.  The Act states that no teacher in a school shall be liable for harm caused by an act or omission of the teacher on behalf of the school if certain circumstances are met.  Section 6736(a)(4) provides that a teacher is not liable unless the harm was caused by "willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed." Plaintiffs have failed to show that the conduct of any of the individual defendants amounted to gross negligence, misconduct or conscious indifference to the rights or safety of K.R.  Thus, the individual defendants are alternatively entitled to absolute immunity.

For the above reasons, this Court will grant Defendants' summary judgment motion as to Count III.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| K.R., a minor, by her Parents | : | CIVIL ACTION |
| v. | : | |
| SCHOOL DISTRICT OF PHILADELPHIA, et al. | : | NO. 06-2388 |

## <u>ORDER</u>

_____AND NOW, this 26th day of June, 2008, after careful and independent consideration of all parties' motions, it is hereby ORDERED that:

1)      Plaintiffs' Motion to Permit Additional Evidence (Doc. No. 77) is GRANTED;

2)      Defendants' Motion for Judgment on the Administrative Record and Motion for Summary Judgment as to Counts II and IV of the Second Amended Complaint (Doc. No. 68) is GRANTED in part and DENIED in part.  Defendants' Motion for Judgment on the Administrative Record is granted, and Defendants' Motion for Summary Judgment as to Counts II and IV is denied;

3)      Defendants' Motion for Summary Judgment as to Count III of the Second Amended Complaint (Doc. No. 70) is GRANTED;

4)      Defendants' Motion to Strike Declaration (Doc. No. 87) is DENIED as moot.

5)      Any pretrial motions should be filed by July 10, 2008.

6)      A final pretrial conference is schedule for July 15, 2008 at 4pm in Courtroom 3A.

7)      The Court intends to try this case in August, 2008.  Prior to the final pretrial conference, counsel shall discuss their schedules with each other and schedule

video depositions of any witness who may not be available for trial.

8)      Plaintiffs shall file under seal a financial statement, following which the Court

will rule on Defendants' Motion to Dismiss for Untrue Allegations of Poverty

(Doc. No. 67).

BY THE COURT:

/s/ Michael M. Baylson

_____

Michael M. Baylson, U.S.D.J.

A:\06-2388 K.R. v. Sch. Dist. Memo re all outstanding motions 06-26-08.wpd