IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| K.R., et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 06-2388 |
| SCHOOL DISTRICT OF PHILADELPHIA, et al. | : | |

**MEMORANDUM RE: MOTION FOR NEW TRIAL**

**Baylson, J.**  December 26, 2008

Presently before this Court is Plaintiffs' Motion for New Trial. For the reasons that follow, the Motion will be denied.

**I.   Background and Procedural History**

The factual background of this case has been described by this Court in the past. See K.R. v. School Dist. of Philadelphia, 2007 WL 2726236, at *1 (E.D. Pa. Sept. 14, 2007) (considering several motions to dismiss); K.R. v. School Dist. of Philadelphia, 2008 WL 2609810, at *1-2 (E.D. Pa. June 26, 2008) (considering several motions for judgment). The facts leading up to this litigation will therefore be briefly summarized.

The child at issue in this case, K.R., was diagnosed with Autism Spectrum Disorder (Asperger Syndrome). Before K.R. entered kindergarten at Solis-Cohen Elementary School, Dr. Taylor did not diagnose K.R. with autism, but identified her as learning disabled, and the School District developed an Individualized Education Program ("IEP") for her, which provided for "as needed" assistance through the School Based Behavioral Health ("SBBH") program. Halfway through K.R.'s first year of kindergarten, the school revised her IEP to include one-on-one therapy from a staff assistant at the PA Mentor network.

The following school year, while K.R. was in first grade, the District eliminated her one-on-one support, and provided her with an uncertified teacher for her instruction. During the same year, K.R. was verbally and physically assaulted by her classmates on two occasions. Fearful for K.R.'s safety and dissatisfied with the instruction she was receiving, K.R.'s parents withdrew her from school and have been home-schooling her since.

In May 2005, K.R.'s parents sought a due process hearing under the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1401 et seq., on the grounds that the District had failed to provide their daughter with a free appropriate public education ("FAPE") and safe school environment. The Hearing Officer denied the parents' request and concluded that the record weighed in favor of the School District. The Appeals Panel affirmed the Hearing Officer's decision, and Plaintiffs commenced this action on June 13, 2006. (Doc. 3).

After several motions were decided by this Court, including granting summary judgment for the School District on Plaintiffs' IDEA claim (Doc. No. 89), Plaintiffs proceeded to trial on their claims alleging violations of Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act. After several days of trial from August 20, 2008 until August 25, 2008 (Doc. 110-16, 131), the jury returned a verdict in favor of the School District (Doc. 122), and Judgment was subsequently entered for the School District and against Plaintiffs (Doc. 123). Plaintiffs subsequently filed both a Motion for New Trial (Doc. 124) and a Motion to Excuse the Filing of a Transcript (Doc. 127). This Court granted Plaintiffs' Motion to Excuse the Filing of a Transcript, <u>K.R. v. School Dist. Of Philadelphia</u>, 2008 WL 4822041 (E.D. Pa. Nov. 5, 2008). Plaintiffs' Motion for New Trial is currently before this Court.

## II.     Standard of Review

Rule 59 of the Federal Rules of Civil Procedure allows a trial court, in its discretion, to grant a new trial "on all or part of the issues in an action where there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a)(1).  Such an endeavor is not, however, lightly undertaken, because it necessarily "effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of the facts."  Lind v. Schenley Indus., Inc., 278 F.2d 79, 90 (3d Cir. 1960) (en banc). Therefore, "[a] new trial may be granted [only] when the verdict is contrary to the great weight of the evidence; that is, 'where a miscarriage of justice would result if the verdict were to stand.'" Pryer v. C.O. 3 Slavic, 251 F.3d 448, 453 (3d Cir. 2000) (quoting Olefins Trading, Inc. v. Han Yang Chem. Corp., 9 F.3d 282, 289 (3d Cir. 1993)).

When the asserted basis for a new trial is the that jury verdict is against the weight of the evidence, "the district court ought to grant a new trial only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience."  Klein v. Hollings, 992 F.2d 1285, 1290 (3d Cir. 1993); EEOC v. Delaware Dep't of Health and Social Servs., 865 F.2d 1408, 1413 (3d Cir. 1989).  In making this determination, the Court should consider the character and complexity of the evidence that the jury considered; the Court has less leeway to substitute its judgment for that of the jury where the subject of the litigation is "easily comprehended by any intelligent layman." See Lind, 278 F.2d at 88-91.

When the asserted basis for a new trial is trial error by the judge, "the court's inquiry ... is

twofold.  It must first determine whether an error was made in the course of the trial, and then must determine whether the error was so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice."  Farra v. Stanley-Bostitch, Inc., 838 F. Supp. 1021, 1026 (E.D. Pa. 1993).

### III.    Discussion

Plaintiffs argue that their Motion for New Trial should be granted for four reasons:  (1) this Court's not including additional language in the verdict form; (2) this Court's errors in charging of the jury; (3) comments on the evidence by this Court and statements made by Defense counsel; and (4) the great weight of the evidence.

#### A.    Verdict Form, Jury Instructions, and Comments by Court

Plaintiffs' claims at trial under Title II of the ADA and § 504 of the Rehabilitation Act were limited to only the behavioral, rather than the educational, portion of the services provided to K.R. by the School District.  In the Order dated June 26, 2008, this Court granted the School District's Motion for Judgment on the Administrative Record for Plaintiffs' claim for a violation of IDEA and a denial of K.R.'s right to a FAPE.  (Doc. 89).  As a result of that June 26 Order, the sole issue remaining in the case were whether the School District discriminated against K.R. or denied her a reasonable behavioral accommodation.  Without any ruling by the Supreme Court or the Third Circuit on the relationship between IDEA and the ADA and Rehabilitation Act, on facts similar to Plaintiffs', this Court saw a need to ensure that the Order granting judgment on the administrative record for the IDEA claim and FAPE was not contradicted by the jury's verdict.  Had this Court permitted Plaintiffs to go forward on a FAPE theory for the remaining claims, it would have essentially eviscerated any finality of the June 26 Order on the IDEA claim

and the denial of FAPE theory.

First, Plaintiffs contend that this Court erred in the language provided to the jury in the verdict form, the jury instructions, and instructions provided at trial.  Plaintiffs' primary support for this argument relates to the legal theory of "reasonable accommodations" under Title II of the ADA and the Rehabilitation Act.  As to the verdict form, Plaintiffs contend that "including only the word 'discriminate' failed to inform the jury that the School District had an affirmative duty to provide a reasonable accommodation."  (Pl.'s Mot. New Trial at 4).  As to the jury instructions, Plaintiffs argue that this Court improperly left out instructions that the School District had an affirmative duty to provide a "reasonable accommodation" and that the failure to provide such a reasonable accommodation can amount to discrimination.  Plaintiffs also contend that this Court's instructions to the jury concerning the "one-on-one" issue[1] and the burden on Plaintiffs to show more than a denial of an educational program by the School District were made in error.

Each of Plaintiffs' arguments goes to the same core issue:  the nature of the "one-on-one" issue and whether Plaintiffs provided sufficient facts or law to establish that the one-on-one was a behavioral, rather than an academic, accommodation.  The Court had concluded that "one-on-one" was an academic educational issue that had been resolved against Plaintiffs in the administrative proceeding, and was no longer relevant at trial.

First, it is clear from a review of the record leading up to trial and the trial recordings that Plaintiffs' argument concerning reasonable accommodation rested exclusively with the one-on-

---

[1]As developed in the administrative proceeding, Plaintiffs assert that Defendants' withdrawal of "one-on-one" instruction (i.e., a teacher exclusively assigned to K.R.) was improper.

one.  The first time the legal theory of "reasonable accommodation" was raised by Plaintiffs was in their Supplemental Trial Memorandum (Doc. 104).  In that document, Plaintiffs responded to objections made by the School District concerning two witnesses, Dr. Levisohn and Dr. Prensky, by arguing that their testimony would be offered to support Plaintiffs' theory that the School District failed to provide a reasonable accommodation to K.R.  In doing so, they summarized their theory of the case as follows:  "Plaintiffs contend that the School District caused the removal of [K.R.]'s TSS [one-on-one] worker during first grade, and the failure to make that reasonable accommodation created a dangerous situation for [K.R.] that deprived her of the benefits and excluded her from participation in the School District education program because her parents were obligated to keep [K.R.] safe."  (Doc. 104 at 4).

     Plaintiffs' linkage of reasonable accommodation to a one-on-one continued throughout the trial.  For instance, during Plaintiffs' opening argument, Plaintiffs first presented to the jurors their theory that the one-on-one was an accommodation for K.R. in the classroom.  (Doc. 112, Audio 8/20/08 Afternoon, 00:07:40).  A few minutes later, Plaintiffs' counsel summarized their theory by saying:  "Our theory of this case is that, when she went from kindergarten to first grade and she had this abrupt change of not having a one-on-one worker and when she went to first grade without a one-on-one worker, that was an abrupt change, and she lost the support that she needed in the program."  (Doc. 112, Audio 8/20/08 Afternoon, 00:12:23).  That theme was consistent throughout the presentation of the evidence at trial.

     By the end of the morning session on August 22, 2008 and after Plaintiffs finished their case-in-chief, this Court recognized that the evidence presented by Plaintiffs failed to show how a one-on-one was anything but an educational accommodation, and not a behavioral one, and

thus not relevant to the trial. (Doc. 115, Audio 8/22/08 Morning, 02:57:20).

Plaintiffs' argument concerning the reasonable accommodation theory of liability was made for the first time only five days prior to trial. See (Doc. 104). Up to that point, Plaintiffs had argued that their theory of liability was based on both discrimination and a failure to provide a FAPE to K.R.. See (Second Am. Compl., Doc. 35, ¶¶ 42-49, 53-57). After this Court's June 26 Order granting the School District's Motion for Judgment on the Administrative Record for the IDEA claim, Plaintiffs proceeded to trial on the theory of discrimination under Title II of the ADA and § 504 of the Rehabilitation Act. After the Court charged the jury but prior to deliberation, the Court held a sidebar on the issue of whether the jury should be charged on reasonable accommodation and whether that theory had ever been in the case. As this Court noted at the time (Doc. 131, Audio 8/25/08 Morning, 00:26:50), the ADA and Rehabilitation Act claims had always been tried on the theory of discrimination. Plaintiffs' use of the phrase "reasonable accommodation" arose at the eve of trial and was not even used consistently.

This Court appropriately did not extend the jury instruction and the verdict form to include the reasonable accommodation theory of liability. The trial of Plaintiffs' claims under the ADA and the Rehabilitation Act was limited to the behavioral, rather than the academic, portion of the School District's services for K.R. As Plaintiffs failed to link, on a timely basis, their reasonable accommodations theory of liability to any other practice, this Court's denial of Plaintiffs' request concerning the jury instructions and the verdict form was proper.

### B.   Comments on Evidence by Defense Counsel

Plaintiffs next contend that a question stated by the School District's counsel concerning the administrative hearing was prejudicial. Beginning a new question in the cross-examination

of K.R.'s mother, Defense counsel said: "The decision of the Hearing Officer was in favor of the School District . . . ." (Doc. 115, Audio 8/22/08 Morning, 00:21:35). However, as Plaintiffs point out, the Court then made this instruction: "The jury will disregard that question. It's not part of this case." (Doc. 115, Audio 8/22/08 Morning, 00:21:43). The slight reference to the conclusion of the administrative process was corrected by this Court's instruction to the jury to disregard the question. Plaintiffs did not suffer any incurable prejudice as a result.

    C.    **Great Weight of the Evidence**

Plaintiffs' final argument is that the verdict was contrary to the great weight of the evidence at trial. While again arguing on the basis of the reasonable accommodations theory, which was already addressed above, Plaintiffs address a new argument concerning the requirement of FAPE under IDEA and its relationship to § 504 of the Rehabilitation Act. Plaintiffs contend that the requirements of FAPE under IDEA are not identical to the requirements of a FAPE under the Rehabilitation Act.

First, it is important to note that a review of the record by this Court indicates that this argument has never been raised by Plaintiffs. On the contrary, at two points in the record, Plaintiffs appeared to agree either that the FAPE requirements of IDEA and the Rehabilitation Act were identical, or that, after this Court's grant of summary judgment on the IDEA claim, there was no additional liability for a FAPE violation under the ADA or the Rehabilitation Act. See (Second Am. Compl. ¶ 45) ("A violation of IDEA is a violation of the Rehabilitation Act."); (Doc. 116, Audio 8/22/08 Afternoon, 00:01:40) (Judge: "And I also think that . . . I don't think the Third Circuit has ruled on this squarely, but as I understand the general rulings about the relationship between the IDEA administrative appeal process, as opposed to a damages claim

under the ADA or the Rehabilitation Act, that they're mutually exclusive. You can't get damages for the failure to provide an appropriate, free appropriate public education, under the Rehabilitation Act." Ms. Herring, Plaintiffs' Counsel: "That's true.").

Plaintiffs' sole support for the argument is a case from the Ninth Circuit, Mark H. v. Lemahieu, 513 F.3d 922 (9th Cir. 2008). Plaintiff cites the case for the holding that "FAPE under the IDEA and FAPE as defined in the § 504 regulations are similar but not identical." Id. at 933.

For two primary reasons, the case and holding is inapplicable to the case at hand. First, Mark H. arises out of the Ninth Circuit, and the case is therefore not binding on this Court; the Third Circuit has not come to a conclusion on the same issue. Second, the Mark H. opinion recognizes that a satisfaction of the requirements under IDEA are sufficient to satisfy the requirements under the Rehabilitation Act. "[T]he U.S. DOE's § 504 regulations distinctly state that adopting a valid IDEA IEP is sufficient but not necessary to satisfy the § 504 FAPE requirements." 513 F.3d at 933 (citing 34 C.F.R. § 104.33(b)(2) ("Implementation of an [IEP under the IDEA] is one means of meeting" the substantive portion fo the Rehabilitation Act regulations' definition of FAPE); 34 C.F.R. § 104.36 ("Compliance with the procedural safeguards of section 615 of the [IDEA] is one means of meeting" the § 504 procedural requirements in § 104.36)). The Ninth Circuit has therefore recognized that a satisfaction of the requirements under IDEA amounts to a satisfaction of the FAPE requirements under the Rehabilitation Act.

This Court's decision to preclude Plaintiffs from pursuing a claim for a denial of FAPE under § 504 of the Rehabilitation Act, in the context of this Court's June 26 Order granting the

School District's Motion for Judgment on the Administrative Record for the IDEA claim, was therefore proper.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| K.R., et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 06-2388 |
| SCHOOL DISTRICT OF PHILADELPHIA, et al. | : | |

**ORDER**

AND NOW, this 26th day of December, 2008, for the reasons stated in the foregoing Memorandum, it is hereby ORDERED that Plaintiffs' Motion for New Trial (Doc. 124) is DENIED.

BY THE COURT:

s/Michael M. Baylson

Michael M. Baylson, U.S.D.J.

O:\CIVIL\06-2388 K.R v. School Dist Phila\KR v. School Dist of Phila - Memo Re Motion for New Trial.wpd